The following teleconference is recorded for Paula Moore, U.S. Court of Appeals, Tuesday, August 20, 2013, beginning at 1230 p.m. Central Time. Case number 13-8014, Plymouth Park Tax Services v. Michael Bowers, et al. Argument not to exceed 15 minutes per side. Mr. Parris, I want to confirm you're on the line? Yes, I am. And Mr. Whittington, you're on the line? Yes, I am. All right. And Mr. Parris, before you begin, I believe Judge Lloyd would like to speak. Okay. All right. Good afternoon. This is Judge Lloyd. I'm the presiding judge on this panel. And it's my understanding, Mr. Parris, you have requested three minutes in rebuttal? That is correct, Your Honor. All right. Then I am ready for you to proceed. I think the panel is ready. Okay. Thank you very much. Again, Scott Parris on behalf of Plymouth Park Tax Services. Does the panel want a brief summation of the background on this case, or is that something you'd rather me forego? It is up to you. Okay. All right. I'll give a very brief summation then. Plymouth Park Tax Services is a holder of certain real estate tax certificates, in this case, as to debtors' real estate. Debtors filed their Chapter 13 in May 2012. Plymouth Park had objected to confirmation of their plan based on the fact that it was not properly or sufficiently provided for, and the debtor also objected to Plymouth Park's proof of claim. The main issue that was brought up in both of those objections was the proper allowance of interest by statute and attorney fees for foreclosure proceedings that were initiated prior to the bankruptcy proceeding. After an evidentiary hearing, the bankruptcy court upheld allowance of the attorney fees, so sustained and overruled in part Plymouth Park's objection to confirmation, and also sustained and overruled in part debtors' objection to Plymouth Park's proof of claim with regard to the 18% interest. The main issue in front of the panel is whether or not that 18% interest attaches to Plymouth Park's certificates, and therefore they're allowed claim pursuant to 11 U.S.C. 511 upon the filing of a notice of intent to foreclose regardless of the redemption status by the property owner. This case is fairly unique in Summit County, Ohio, because it's one of the only counties that negotiates its rates on these certificates to such a low percentage. In this case, the certificate that was purchased was negotiated down to 0.25% prior to the notice of intent to foreclose. As I mentioned, this is unique to Summit County. Most other counties actually don't negotiate lower rates, and they're by default at 18% on the face of the certificate. Judge Preston, is that negotiated between the purchaser of the certificate and the county? That is correct, Your Honor. It is negotiated between the purchaser and the county. And that's done at the time of purchase, I assume? Correct. That is correct. Okay. And I've never seen one of these certificates. Is that noted on the certificate itself? It is actually on the face of the certificate, yes. And I believe in this case it was attached to the proof of claim in addition to a summary of the total amount due. There's two certificates in this particular case. Okay. Thank you. No problem. So it kind of parks contention that under revised code 5721, that the interest rate that should apply to these certificates is 18%. And the reason is that there was a notice of intent to foreclose filed about three months prior to the bankruptcy proceeding. And there's three sections of ORC 5721 that reference when this 18% attaches to the certificate. First, it's in the definitions under 572130J1. The certificate interest period is specifically defined as the period from the date of purchase to the date that a request for foreclosure or notice of intent to foreclose has been filed under 572137, which it had been in this particular case. The second section that references the 18% interest and the time periods that it attaches is the redemption section. That was the section that the bankruptcy court relied upon. We believe in a limited fashion, as it should not have been read, but it is listed there. And there they also set forth that if a property holder decides to redeem their tax certificates prior to a notice of intent to foreclose, then they only have to pay the negotiated amount on the face of the certificate. If they choose to redeem it after the notice of intent, then they must pay the 18% under the certificate. The final section that references this is 572139, and that relates to foreclosure judgment being taken in favor of the tax certificate lien holder. At that point, again, the 18% would obviously attach because a foreclosure has been initiated, and that also references that calculation period or that trigger period. Again, this is a fairly simple issue. At Plymouth Park, their position is that redemption is not the trigger for that 18% interest, as the bankruptcy court's decision seems to imply, but that the notice of intent to foreclose being filed is actually the trigger and that redemption is irrelevant to that analysis. The only real case that discusses interest with regard to these certificates in the Chapter 13 setting is the In re Cortner decision, which is out of the Southern District of Ohio. It basically stands for the proposition that 11 U.S.C. 511 mandates application of state law for tax or governmental claims, specifically with regard to interest. In that case, it was another tax certificate lien holder, American Tax Funding Services. Mr. Parrish, this is Judge Emerson. With respect to that Cortner decision, wasn't that an auction sale instead of a negotiated sale, and does that make a difference? I believe it may have been an auction sale. I don't believe it makes a difference necessarily. The two main distinguishing factors, as far as the fact turner in that case and this case, are that one, the interest on the face of the certificate was at 18%, so there was no negotiated lower rate nor any voluntary lower rate on that certificate. That fact pattern is not analogous to this one. The second is, and if you look at the proof of claim filed by ATFS in that bankruptcy case, you can see there's no foreclosure fees, which indicates there is no foreclosure filed or notice of intent to foreclose filed. The certificate interest would have applied regardless under 572130J. Cortner is not really factually analogous to this case, but its decision is not opposite to what Plymouth Park is arguing either. If a lower negotiated interest rate were applicable in that case, then that rate would have applied since no notice of intent to foreclose had been filed in that particular proceeding. Let me ask you about section 5721.37A2. Are you familiar with that section? I am familiar with that section, yes. Okay, and that section talks about the certificate holder filing a proof of claim and talks about that the time for the redemption period, I guess, or the expiration period, I should say, is extended upon a bankruptcy filing. But it also, in the last paragraph in that subsection there, says interest as the certificate rate of interest continues to accrue during any extension of time required by Division A2 of this section unless otherwise provided under Title XI of the United States Code. Doesn't that section seem to show some intent of the Ohio legislature to say, hey, the certificate rate of interest applies in bankruptcy cases? I don't believe it's applicable. And the reason is if you look at the first sentence of that provision, it's before the expiration of the certificate period. And what that applies to is it's that one-year period from the date shown in the tax certificate to the date that a foreclosure or notice of intent to foreclose could be filed. Are you saying because it's auction sales? Because I thought the expiration period on negotiated is whatever the negotiated period is up to like six years. Am I wrong about that? My reading of the statute as far as the expiration of the certificate period deals with that one-year period from the date on the tax certificate to the date of foreclosure. In this case, that one-year period had passed. So I really don't think that that section applies to this particular circumstance. And I don't know the specifics here, but I believe Kortner actually addressed that because that issue was raised by the debtor in that case as well. And they had also indicated, and I can't remember the specifics to be frank with you, and I apologize for that, but for whatever reason that didn't apply. But my reading of that statute is that it basically tells the period that you have to file your notice of intent and freezes that certificate interest during that period for purposes of bankruptcy if the bankruptcy is filed before the expiration of the certificate period. In this particular case, again, the bankruptcy was filed after that one-year date on the tax certificate and the notice of intent to foreclose had already been filed. Thank you. No problem. I hope that clarifies it. So with that, that's really the only issue here. And just to briefly conclude, again, it's Plymouth Park's contention that ORC 5721 sets forth that real estate tax certificates carry the negotiated interest rate until a notice of intent to foreclose is filed. After notice of intent is filed, the interest rate of 18% attaches to that certificate regardless of the negotiated rate and regardless of the redemption status. In the matter before this panel, the notice of intent to foreclose was filed by Plymouth Park before the bankruptcy petition. Therefore, the appropriate interest rate pursuant to 11 U.S.C. 511 applicable to this bankruptcy petition should have been 18%. And Plymouth Park is asking for a decision with that regard in relation to the confirmation of this Chapter 13 and its objection on the interest rate issue. Mr. Parris, this is Judge Preston again. Help me understand the mechanics of a redemption payment plan under 5721.38C1 and 2. And I understand the point you have made about the notice of intent to foreclose being a trigger that applies regardless of whether there's a plan or not. One of our questions was, would a Chapter 13 plan be interpreted to be a redemption payment plan covered by Section C2 and C1? It's a very interesting issue. And the bankruptcy court, and I know this is de novo review, but the bankruptcy court underneath it held that it was not a redemption for those purposes. And I think we agree with that. This issue has come up a couple of times in mortgage redemption scenarios. And it has been held, I believe, in our circuit that redemption of those circumstances, the Chapter 13 does not constitute redemption for those purposes. And I believe that we agree with that assessment here with regard to this as well. And that would be our reading of that. My understanding of redemption for purposes of 5721.32 is that it would be a negotiated either payment plan or lump sum payment between the tax certificate holder and the property holder. And just so we have a full understanding, if there's a redemption plan negotiated between the parties, is that reduced to writing or does the county have a form that the parties execute? How mechanically does that work? My understanding is that it's a form. And then, again, under B2, obviously, it's the interest rate is going to depend upon, again, the status of that notice of intent to foreclose. I understand. At that point. Okay. Any other questions? Yeah, this is Judge Preston again. Is there any other statute? I know you all didn't cite any, but we asked this question among ourselves before the oral argument. Is there any other statute in this part of the tax code that sets sort of a default interest rate that applies if there seems to be a gap in a more specific statute? You know, the only section I believe, and I think it's in the definitions, that sets forth the default rate, and that's basically when the certificate's held or there's a negotiation, it starts at 18 percent. So that's your starting point by default. That's the only other reference that I'm aware of. And then it's negotiated down from there, and it can go down as low as this one, which is 0.25 percent. What's that one section again? You said it was in the definitions section? Correct. What's the statute? I believe it's section G of 5721.30. Section G sets forth that the auction or certificate rate of interest means rate of simple interest per year bid by the winning bidder in an auction of a tax certificate or the rate of simple interest per year not to exceed 18 percent per year fixed pursuant to 5721.42 of the revised code. So 18 percent's basically the default max rate that that certificate's going to be, and most counties in the state of Ohio automatically have that rate on their certificate, and that's why I mentioned Summit County is one of the only counties that negotiates down from 18 percent, and this just happened to be one of those cases. But as far as I know, that's the only other reference that sets forth sort of a default maximum rate of interest for these certificates, and then the negotiation, if there is one, goes down from there. Ms. Parrish, this is Judge Lloyd. I'd like to ask you, you mentioned that there are some cases out there that held that Chapter 13 plans do not count or qualify as mortgage or as redemption plans, mortgage redemption plans. Do you have any of those type cases? I don't have them off the top of my head, and I apologize, and the only reason I don't is because we weren't really disputing that portion of the decision, and I don't have them off the top of my head. I've only dealt with it once in the Northern District in cases of redemption, and we've always understood that to be the law, at least in the Northern District of Ohio, that redemption under... Go ahead, I'm sorry. The Northern District of Ohio case law that says Chapter 13 plans cannot be used as mortgage redemption plans. They do not constitute redemption for purposes of mortgage redemption agreements. That's correct. Judge Lloyd, would we like to ask Mr. Parrish if he would just give us a file of supplement, just giving us a few citations for that principle? Yeah, I'd be happy to do that. That would be very easy. Yeah, I'm not suggesting any kind of additional argument or anything, just giving us a citation to support that notion. Certainly. Mr. Parrish, did you say that the lower court here, Judge Shea-Stollom, agreed that or mentioned that C-2 didn't apply, the redemption payment plan didn't apply to 13? Because I don't recall seeing anything in the opinion. The holding does make a very brief reference to the concept that the Chapter 13 payment plan does not constitute redemption for purposes of this statute. It does not cite the case law that I was just discussing, but it does make that statement. Okay, it says redemption. It doesn't say redemption payment plan. No, that's correct. And normally redemption is a lump sum. I mean, I believe there have been situations where payment plans have been worked out, but normally it is a lump sum payment to redeem that certificate. Well, Mr. Parrish, was that not a reference to B-2 and not C-2? Of 37, you mean? Right. You say Judge Shea-Stollom said that the redemption didn't qualify as a Chapter 13, redemption payment plan, but wasn't her specific reference to 38B as opposed to C-2? That is very likely, and I'm not sure off the top of my head, but it's possible that it was under B-2 instead of C, yes. Because B is the lump sum redemption, whereas C-2 is the voluntary payment plan. Payment plan redemption, right, right. And I'm not sure if she even looked at Section C in her decision. So, yes, I think you're correct that it was limited to B-2. Does the C-2 payment provision, payment plan provision, require a voluntary agreement? It does require a voluntary agreement, yes. How do you know that? It's only based off my experience in dealing with these outside of the bankruptcy context. Again, it's something that the debtor is generally going to request from the tax lien certificate holder. If they don't request it, then it's not going to be exercised at that point. So it is a right that generally is exercised by the property holder, at least under the Ohio law. So this does present kind of a unique circumstance in the sense that, yes, obviously Chapter 13 is not something where there, I guess you could argue that the filing of the case is exercising that right. I don't know if, again, obviously our arguments have not extended to that, but I suppose that argument could be made, yes. Well, let me ask you this. You said property holder. Are you talking about the tax lien holder or the debtor property owner? Debtor property owner, yes. And I'm sorry, I shouldn't use the term holder. That's confusing a little bit. So, yes, the property owner basically would exercise that right, yes. And it's their right to exercise it. Right. And you're saying then that's just a practice as opposed to there being any precedent or legal authority. That is correct. And certainly under state law, you're never going to have a scenario where a property owner has not exercised that right and a tax lien certificate holder has been forced to accept some sort of plan. It's always going to be a voluntary exercising of that right or a request for that payment plan. I wonder why the statute doesn't use the word voluntary then. I would use the word voluntary. And it is an interesting issue. And obviously one thing this case points out is that sometimes these statutes are not, you know, one of the things Plymouth Park is arguing here really is the practical application of this in the context of Ohio law. But the statute is not. This case probably wouldn't be in front of the panel if the statute was crystal clear. It expired. Yes. All right. Mr. Whittington. Thank you. My name is Robert Whittington. I represent the debtor appellees Michael and Margarita Bowers. And I'd like to first thank the panel for allowing counsel to appear telephonically. It's a great convenience not to have to travel to and from Cincinnati. And I appreciate that. Your Honors, in this case the appellant is seeking to convince the panel that it should ignore the 0.25% interest rate negotiated at the tax sale with the county and also ignore the applicable case law in this matter to reach the conclusion that the appellant is entitled to receive interest at the rate of 18% on the $4,083 tax certificate. The appellees respectfully believe that the bankruptcy court below concluded correctly that pursuant to Ohio law, the interest rate that was negotiated between the county and the appellant should not be ignored. We believe this is consistent with the decision of Judge Humphrey in the Kortner decision. That decision specifically held that the creditor is entitled to the interest rate established by the tax certificate at auction on the debtor's delinquent real estate taxes. In other words, the creditor isn't automatically by statute entitled to an 18% rate. And it's the rate negotiated by the parties the appellees believe to which this court should defer. And in this case, that was the 0.25% rate. The appellant's argument here is that it is entitled to receive 18% interest on this tax certificate despite the fact that it negotiated for a much smaller rate at the tax sale simply because it filed or caused to be filed a notice of intent to foreclose its tax lien with the county treasurer. The appellee submits that nothing in section 5721.38B compels this conclusion. Instead, section 5721.38B is a lump sum provision and specifies the lump sum amount that a person entitled to redeem the property from the tax lien must pay in order to redeem the property from the lien after a foreclosure has been initiated. The lump sum redemption procedure mentioned in 5721.38B is not the same thing as repaying the appellant's claim by way of periodic payments as the appellees are attempting to do in this Chapter 13 case. And we believe that the bankruptcy court below correctly analyzed the Ohio statute in reaching its conclusion that this statute did not compel the payment of an 18% rate on the relevant portion of the appellant's claim. So Mr. Whittington... Go ahead, George Emerson. Well, Mr. Whittington, so if that section doesn't apply, what section does apply under Ohio law to set the interest rate? I think the court has to look at what the parties bargained for. And what they bargained for was the negotiated interest rate. Is that set out in some other section of the Ohio Code? No, I don't believe it is. I believe it's set forth on the tax certificate itself. But isn't that a rate negotiated between the county and the certificate purchaser as to their relationship? The debtor's not involved in that negotiation, is it? No, the debtor is not involved, but I think the appellant is entitled to more than what it bargained for. But doesn't that just become a wash then? They don't gain any profit by making this investment, do they? Under your scenario? Well, they do make a profit, but the profit is what they negotiated to receive. They don't get to enhance their position simply because the debtor filed a Chapter 13 case, which I believe is what the appellant's argument boils down to. So in response to Judge Emerson's question, there is no statute that specifically addresses the situation we're facing today? Well, C-2 might, and I made that argument with the Bankruptcy Court, but the Bankruptcy Court, quite frankly, didn't buy it. The Bankruptcy Court didn't believe that a Chapter 13 plan was the same thing as a redemption payment plan under the Ohio statute. And looking at C-2, frankly, I think it does not apply. I don't think there's anything that would compel any conclusion that C-2 is in any way equivalent to a Chapter 13 repayment arrangement. So somewhere, I didn't see that in the judge's opinion. Was there somewhere during the hearing, is there somewhere in the transcript where Judge Shea-Stonem said that C-2 didn't really apply? No, she didn't say it. She never reached that. Okay. She never went that far, I don't believe. So Mr. Parris's argument that the trigger for setting the interest rate is the notice of intent to foreclose, you disagree with that? I do disagree. And does that effectuate any kind of alteration in the relationship of the parties as to the amount due or the interest rate? I don't believe it does. Okay. And the appellant has argued that 5721.37 compels a conclusion that the mere filing of a notice of intent to foreclose by the certificate holder entitles the certificate holder to the 18% rate under the debtor's plan. 5721.37 does a whole bunch of things. It sets forth the time in which an intent to foreclose must be filed. It provides for tolling during the pendency of a bankruptcy case. It provides a limitation period on the filing of the foreclosure request. And it specifies the fee payment that must accompany the request. And it finally spells out the procedure that should be followed in the foreclosure case. But nowhere does 5721.37 compel any conclusion that the filing of a notice of intent to foreclose triggers an 18% rate. Mr. Whittington, what about that section that I brought up with Mr. Parris, that paragraph that interest, that is actually 5721.37A2, the last paragraph that says interest at the certificate rate of interest continues to accrue during any extension of time required by the Division A2 of this section unless otherwise provided in Title 11 of the U.S. Code? Well, I don't think it's abundantly clear that that's referring to the 18% rate and not the negotiated rate. It says certificate rate of interest, so I would assume the certificate rate of interest is what was negotiated, 0.25%. Is that not what that meant? It may well be, but I sure don't believe it compels a conclusion that the 18% rate applies. If that answers your question, Your Honor. It does enough, yes. Thank you. Finally, the appellant argues in its brief that Ohio Revised Code Section 5721.39 somehow adds support to its argument, and the appellees respectfully disagree and submit that 5721.39 has no relevance to the present case whatsoever, as that specific statute refers only to foreclosure judgments, and here there never was a foreclosure judgment entered against these appellees. Based on the foregoing, the appellees respectfully submit that the panel should uphold the decision of the bankruptcy courts below, and I believe this concludes my argument. Mr. Whittington, this is Judge Preston. In an effort to make sure that we are fair, let me just pose the same questions to you or ask you if you want to elaborate or if you disagree with any of Mr. Paris' comments about the mechanics of the redemption plan that we discussed and whether or not a plan falls within the parameters of that section. You mean under C2, the C2 redemption? I believe he's probably correct as far as the mechanics of that is concerned. I think that C2 does require a voluntary agreement to be accepted by the parties. I'm not sure that the imposition of an agreement in a Chapter 13 plan is equivalent to it. I realize this is de novo review, but I don't believe that the bankruptcy court referred to C2 in the court's decision below, and I just want to make sure the panel is aware of that. I'm just trying to make sure that I give you an opportunity to respond to any of Mr. Paris' responses to our questions if you had anything further you wanted to add. The other question that I ask is whether there was another statute in the nature of a catch-all that would set the interest rate, and he suggested 572130 did that. Do you agree or disagree or have any other statutory reference you think we should be considering? I don't have any other statutory reference I think you should be considering, but I would point out that 572130, I think Mr. Paris correctly indicated that that's a ceiling. It's not necessarily the rate that the creditor is entitled ultimately to receive, and I think once again the court has to defer to the negotiated rate that is set forth in the certificate, which is the 0.25% rate in this case. Thank you. Are you ready for Mr. Paris' rebuttal? Yes. Did I use up all my time, though? Because I thought I had. To be fair. That's up to the judges. I'll leave it to them. I'm not keeping the time, Mr. Lloyd, but if you've concluded, are you concluded, Mr. Paris? Yes, I believe I am. I believe I am concluded, Your Honor. And I believe I used all my time, so I'd rather do the honorable thing and step back from there. All right. Well, are Judges Preston and Emerson, are you concluded? Could we have a sub-conference real quickly? Yes. Dixie? Yes. What do we need to do about that? Yes. Let's wait until before you speak. I'll let Brandon put you in a separate sub-conference. Brandon? Yes, ma'am. One moment. Yes. And you can keep me on with the attorneys. And Judges, Brandon will let you know when you're alone. Everyone is back together now. All right. Thank you. All right. This is Judge Lloyd. Mr. Paris, the court had suggested that you would provide us with a – the panel with a supplement on the issue of whether 13 plans can be utilized for mortgage redemption purposes. Correct. And we have caucused and believe – we need citations for that. And so we believe 10 days. Is 10 days satisfactory for you to supplement the record? That's more than sufficient, Your Honor. All right. And then Mr. Whittington, 10 days for you following that? That's fine, Your Honor. And then that will conclude the record. Is there anything else from the panel? Not from me. Thank you. Or from me. All right. Well, at this time, then, thank you, Mr. Paris and Mr. Whittington. We appreciate your time and your efforts. And so we will conclude now. And you now can terminate the phone call by hanging up. Okay. Thank you, everyone. Thank you. Thank you, gentlemen. Thank you all. Brandon, if you can just let them know when they've disconnected. Yes, ma'am. The attorneys are disconnected at this time. Should I also disconnect the recording at this time? Yes, you can disconnect the recording. Thank you, Brandon.